PORTO RICO RACING CORPORATION ET AL., PETITIONERS, *v.* DISTRICT COURT OF SAN JUAN, RESPONDENT.

PETITION for a Writ of Certiorari to the Second District Court of San Juan.

No. 432.—Decided March 7, 1924.

RECEIVERSHIP.—The power to appoint a receiver is a very delicate one and should be exercised with extreme caution and only under circumstances requiring summary relief, or when the court is satisfied that there is imminent danger of loss, lest the injury thereby caused be greater than the injury sought to be averted. It should never be exercised in a doubtful case, or when it is likely to cause injustice or the impairment of private rights.

The facts are stated in the opinion.

*Messrs. M. Guerra, H. G. Molina* and *L. Feliú* for the petitioners.

*Mr. R. Rivera Zayas* for the adverse party.

MR. JUSTICE ALDREY delivered the opinion of the court.

This is a certiorari proceeding to review an order of the Second District Court of San Juan appointing a receiver *pendente lite.*

The San Juan Racing & Sporting Club, a corporation, had been engaged for many years in the operation of a hippodrome in the ward of Santurce of this city of San Juan, P. R., and the enterprise had become prosperous and profit-

able. Late in the year 1922 Deogracias Viera commenced the construction of another hippodrome in the neighboring ward of Hato Rey, Río Piedras, and it was opened on May 6, 1923, whereupon competition arose between the two hippodromes.

In April of 1923 the ten stockholders of the San Juan Racing & Sporting Club, who were the only stockholders and at the same time its directors, formed a new corporation under the name of the Porto Rico Racing Corporation for the purpose, among others, of operating and leasing hippodromes.

When Viera commenced the construction of his hippodrome the president of the San Juan Racing & Sporting Club began to negotiate with him for the purchase or lease of the new hippodrome, but his offers were not accepted until after five months of competition. Then on September 21, 1923, a public contract was signed whereby Deogracias Viera and his wife leased their hippodrome, the Quintana Racing Park, to the Porto Rico Racing Corporation until May 24, 1926, for the sum of $18,000 annually, payable quarterly in advance in instalments of $4,500 each, with an option for its purchase for the sum of $200,000 at any time during the life of the lease. The Porto Rico Racing Corporation agreed to pay the said rent; to keep the hippodrome and its appurtenances in good condition; to admit Viera as one of its stockholders; not to change the name of Viera's hippodrome; not to use the Santurce hippodrome for racing; to pay the taxes and a fire insurance premium, and to collect for the account of Viera what the owners of horses owed him. The San Juan Racing & Sporting Club, also a party to the contract, agreed to close its hippodrome in Santurce and became surety for all of the obligations contracted by the Porto Rico Racing Corporation.

This contract had been in effect for a little more than a month and under its terms Viera had been admitted as a stockholder of the Porto Rico Racing Corporation; the

San Juan Racing & Sporting Club had closed its Santurce hippodrome to racing and had commenced to tear it down, and Viera had received in advance the first quarterly instalment of rent, when the Viera spouses brought an action against the Porto Rico Racing Corporation and the San Juan Racing & Sporting Club for the return to them of their hippodrome, the Quintana Racing Park, with all of the profits received from it by the Porto Rico Racing Corporation, on the ground that the lease was void because the purpose and will of the plaintiffs in making the contract was that the San Juan Racing & Sporting Club, the only competitor and with sufficient guaranty, should assume its performance; that without its participation they would not have entered into the contract; that for the purpose of establishing the representative capacity in which they acted as parties to the contract the presidents of the two corporations exhibited false certificates signed by their respective secretaries; that the president of the Porto Rico Racing Corporation presented a certificate stating that its president was authorized by a resolution of September 17, 1923, to lease the Quintana Racing Park and the plaintiffs had discovered later that the said corporation held no meeting on that day nor adopted any such resolution; that the president of the San Juan Racing & Sporting Club presented another certificate stating that the directors of the said corporation passed a resolution on September 17, 1923, authorizing him to become a party to the contract in order to bind the corporation as surety for the performance of the contract and the payment of the rent, together with the other obligations contracted by the Porto Rico Racing Corporation, and to agree to the condition that the corporation would close its Santurce hippodrome to racing, when the facts is, as the plaintiffs discovered later, that he was authorized only to participate in the contract and bind the corporation to close its hippodrome to racing while the contract should be in force and was not empowered to bind

the company as surety, the plaintiffs having signed the contract by reason of these false representations.

After filing the complaint the plaintiffs moved the court to appoint a receiver to take charge of the leased Quintana Racing Park hippodrome and operate it until the termination of the suit. In the motion they referred to the filing of their complaint for the annulment of the contract for the reasons therein stated and especially for the lack of their consent, because they had been induced to sign the contract by error, and alleged that they had delivered possession of their hippodrome; that it was producing $2,500 weekly; that according to information and belief the Porto Rico Racing Corporation had not sufficient resources and property to answer for the profits that the hippodrome was yielding; that the profits and the hippodrome ran the danger of being lost or seriously damaged, and that the plaintiffs had no other legal recourse for their protection.

The defendant corporation opposed the appointment of a receiver and alleged, among other things, that the motion for such appointment and the original complaint did not state facts sufficient to constitute a cause of action; that if the plaintiffs had any rights they had a complete, speedy and effective remedy in the ordinary course of law to secure them, as well as to secure the effectiveness of the judgment that might be rendered; that the plaintiffs were estopped from attacking the contract and from praying for its annulment and rescission; that if the contract had had any fatal defect it had been validated and the action had become extinguished. They denied having led the plaintiffs into error and alleged that the plaintiffs had knowledge of the faculties of the defendants because their charters were registered in the office of the Executive Secretary of Porto Rico. They denied that the Porto Rico Racing Corporation lacked resources to respond for the claim of the plaintiffs or that it was insolvent, alleging that it had a cash capital of $18,000 and that the San Juan Racing & Sporting Club

had properties of the value of $300,000. They denied that the hippodrome and its profits were in danger of being lost or seriously damaged and alleged that the plaintiffs had profited by the contract because the San Juan Racing & Sporting Club had closed its hippodrome and made it completely unserviceable. Finally they offered to furnish a bond in favor of the plaintiffs to secure their claim. They also answered the complaint, opposing it on different grounds.

The evidence introduced at the hearing on the motion for the appointment of a receiver shows the following:

That after the contract of lease of September 21, 1923, was entered into disagreements arose between the stockholders and directors of the two corporations who were the same persons; that although the minutes of the Porto Rico Racing Corporation did not show that it held a meeting on September 17, 1923, and adopted the resolution mentioned in the certificate exhibited by its president upon the execution of the deed of lease, yet it appears from the said book that on April 10, 1923, it was resolved to authorize the president to take such steps as he might think proper for leasing one or more of the hippodromes in this Island; that on September 24, 1923, its president reported at a meeting of the stockholders that a deed had been signed for the lease of the Quintana Racing Park hippodrome with the condition that one share of stock should be transferred to Deogracias Viera for its par value of $1,000, this being agreed to unanimously and Viera taking possession of the office of director on the same day; that at a meeting of the directors on October 16th it was reported that the deed had been signed in accordance with resolutions adopted on September 17, 1923; that at a meeting held on October 27th it was agreed to ratify the lease of the Quintana Racing Park hippodrome and to enter in the minutes the resolution of September 17, 1923, as stated in the certificate issued by the secretary, and it was agreed also to propose to Viera to substitute the security of the San Juan Racing & Sporting

Club by that of seven of its directors, by a bond of a surety corporation doing business in this Island, or by a deposit in cash in a bank, offering him also that if the hippodrome should be purchased from him the deferred part of the purchase price would be secured by a mortgage on it; that in the said minutes was entered the resolution of September 17, 1923, which was on that day unanimously adopted. Viera did not accept the substitution of the security.

As regards the San Juan Racing & Sporting Club, it does not appear from the minutes of the meeting of September 17, 1923, that any resolution was adopted concerning the Quintana Racing Park, but at the meeting of October 30, 1923, it was agreed by a majority vote to enter in the minutes the fact that a resolution was unanimously adopted on September 17, 1923, authorizing its president to bind it as surety of the Porto Rico Racing Corporation for the lease of the Quintana Racing Park, which resolution was ratified by a majority; that on November 13, 1923, an amendment was made to its articles of incorporation empowering it to become surety in all kinds of contracts, for it having become surety in favor of the Viera spouses under the impression that it had that power, the matter had been considered later and they were in doubt whether it had that faculty.

From the parol evidence it appears that the negotiations with Viera for the lease were made by the president of the San Juan Racing & Sporting Club, who is also a stockholder and director of the Porto Rico Racing Corporation; that three days before signing the deed of lease the president of the San Juan Racing & Sporting Club, and Deogracias Viera took to the office of a notary data for the deed by which the contract was to be entered into between the Viera spouses and the Porto Rico Racing Corporation; that on the following day the security of the San Juan Racing & Sporting Club was added and the deed was signed in that form on the next day, or September 21st; that a

majority of the stockholders and directors of the San Juan Racing & Sporting Club testified that the resolution concerning the security was passed on September 17, 1923, in the event that it should be asked for by Viera, but that it was not included in the minutes in order to give it form in accordance with the wording of the deed.

Some evidence was also presented over the objection of the defendants, tending to show that the track of the Quintana Racing Park contained puddles of water, the witnesses for both parties testifying that on the days to which they referred it rained heavily at that place.

After the examination of the evidence in the afternoon of November 28th the defendants informed the court that before any decision should be rendered they desired to file a written motion to be allowed to give bond in case it should be decided to appoint a receiver, and that if the court should not consider it sufficient they offered to deposit in the court all of the profits of the hippodrome until the court should finally decide the case, or that the court suspend judgment until December 3rd, following, when they would deposit $10,000 or more to answer for the profits of the hippodrome on the 29th of November and the next Sunday, December 2nd; but the court ruled as follows:

"The Court * * * reaches the conclusion that the plaintiffs have great probabilities of success in their action and a receiver should be appointed who in accordance with the law and the jurisprudence applicable, shall take charge of the Quintana Racing Park hippodrome and manage and preserve it under the supervision of the court for the benefit of the party in whose favor judgment is finally rendered. It being impossible now to designate a person as receiver and it being late in the day and tomorrow, Thursday, being a holiday, Saturday a half-holiday and next Sunday also a holiday, and inasmuch as races will be run at the said Quintana Racing Park on the said two holidays, Thursday and Sunday, until the court appoints a permanent receiver it is the court's desire that the said hippodrome be placed in the immediate possession of

Eduardo Urrutia, marshal of this district court, who shall act as such receiver temporarily until on its first working day this court can appoint a permanent receiver.  Meanwhile the receiver temporarily appointed shall give a bond for $5,000; shall take immediate possession, after having qualified, of all of the buildings, lands and appurtenances of the Quintana Racing Park, and shall take special care of and manage under the authority of the court the races to be run at the said hippodrome tomorrow, Thursday the 29th of November, and Sunday, the 2nd of December, of the present year."

On the 30th of November the petition for a writ of certiorari was filed in this court and the writ issued.  At the hearing the plaintiff spouses were represented.

In the case of *Balasquide* v. *Rossy,* 18 P. R. R. 33, we said that the power to appoint a receiver is very delicate and should be exercised with extreme caution and only under circumstances requiring summary relief or where the court is satisfied that there is imminent danger of loss, lest the injury thereby caused be far greater than the injury sought to be averted; that it should never be exercised in a doubtful case or when it is likely to produce injustice or injury to private rights.  These rules shall guide us in deciding the present case.

Although the plaintiffs alleged in their motion for the appointment of a receiver that the Quintana Racing Park hippodrome was yielding a considerable weekly income, estimated at $2,500, and that, according to information and belief, the Porto Rico Racing Corporation had not sufficient property to answer to the plaintiffs for the profits sued for with the hippodrome, for which reason both the hippodrome and the profits were in danger of being lost or considerably damaged, yet we shall not consider this question, because the plaintiffs in their brief before this Supreme Court have laid special stress upon the question of fraud on the part of the defendants in the contract, and because

the obligation clearly appearing from the contract to have been undertaken by the Porto Rico Racing Corporation was to pay $18,000 annually for the lease; and if by reason of the nullity of the contract the said corporation must pay also to the plaintiffs, as products of the hippodrome, the profits received through its business, its experience, its capital and, above all, through the lack of competition because of the closing and demolition of the hippodrome of the San Juan Racing & Sporting Club, it is a question not so clear that it may serve as a basis for the appointment of a receiver and one that should be decided on its merits when the principal action is considered.

We may leave aside also the question of whether the track of the hippodrome is in bad condition, because that was not alleged in the motion or in the complaint and as the evidence of both parties shows that on the days to which that fact refers it was raining heavily in the locality of the hippodrome, we could not hold that the muddy condition of the track was due to abandonment and lack of care on the part of the Porto Rico Racing Corporation.

Although it is true that because for the leasing of his hippodrome Viera conferred with the president of the San Juan Racing & Sporting Club, now the surety, he may have believed that the contract was to be entered into with the said corporation, the fact is that the negotiations terminated in a contract between Viera and the Porto Rico Racing Corporation, secured by the other corporation; therefore, whatever may have been the purpose of Viera it was overcome by the ultimate fact that he entered into the lease contract with the Porto Rico Racing Corporation. Hence the doctrine laid down in the case of *Cintrón & Aboy v. Solá*, 22 P. R. R. 245, is applicable by analogy and therefore he can not charge fraud because the contract was made with the Porto Rico Racing Corporation and not with the San Juan Racing & Sporting Club.

As to the allegation that he was deceived by the president of the Porto Rico Racing Corporation because it was not true that he had authority, as appeared from the certificate that he exhibited at the time of executing the deed, to lease the hippodrome, the evidence shows that since April of 1923 he was empowered to lease one or more hippodromes in this Island and that although there is no record of a meeting held on Septembr 17, 1923, yet from minutes of a later date it appears that a meeting was held on that day and it was resolved to lease Viera's hippodrome, the lease having been ratified by another resolution. Consequently, if there was informality or neglect in not recording the meeting of September 17, 1923, concerning the power conferred upon its president to lease the Quintana Racing Park, in view of those facts we dare not hold that such a resolution was not adopted on that day and that for this reason there was fraud.

Something similar occurred concerning the guaranty given to the contract by the San Juan Racing & Sporting Club. In the minutes of the meeting of September 17, 1923, it does not appear that its president was empowered to bind it as surety in that contract, because, according to the testimony of the president, the resolution was not to be drafted until it could be done in conformity with the deed, but in the minutes of a later meeting it was made to appear that the said resolution was adopted on the said day and it was resolved also to amend the articles of incorporation so as to empower it expressly to become security in that manner in the event that the original articles were not sufficient for that purpose; therefore, in view of these facts, we can not hold that the said president was not authorized to secure the contract, and whether or not he could do so or whether or not the amendment to the articles can validate the contract already entered into, are questions that are not so clear as to justify a declaration of fraud in this proceeding.

Moreover, each case must be decided on the facts connected with it and the facts in this case show that if there was any informality in not duly entering in the minutes of the corporations the resolutions adopted on September 17, 1923, or in the belief entertained by the president of the San Juan Racing & Sporting Club, who is also a stockholder of the Porto Rico Racing Corporation, that the said corporations would approve his action regarding the lease and the security as a means of terminating a competition that meant a loss of money to the stockholders of both corporations, this does not mean that Viera was deceived, especially as the conduct of the said corporations shows not only that they wished to comply with the contract and are complying with it, but that in order to avoid difficulties they have offered new security to the lessor, and, what is still more important, the discontinuance by the San Juan Racing & Sporting Club of its business of horse racing at its Santurce hippodrome and the demolition of that hippodrome have created a situation that is detrimental to the said corporation and advantageous to Viera.

For all of these reasons we are of the opinion that this is not a proper case for the appointment of a receiver and, therefore, the order of the lower court must be set aside.

In view of the conclusion reached it is not necessary to state the reasons for refusing to reconsider our order of December 1, 1923, discharging the temporary receiver appointed by the court.

*Order set aside.*

Chief Justice Del Toro and Justices Wolf, Hutchison and Franco Soto concurred.